**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JOSE BIAOU,<br><br>　　　　　Defendant. | Case No.: 1:24-cr-00323-CRC |

### DEFENDANT'S MOTION FOR A FRANKS HEARING ON THE INTEGRITY OF THE GRAND JURY PROCEEDING AND TO DISMISS THE INDICTMENT FOR GOVERNMENTAL MISCONDUCT

This prosecution is built on a foundation of poison. The investigation was not initiated by a legitimate financial institution tip, but was triggered exclusively by information criminally obtained by a private landlord during illegal entries into the Defendant's home. These acts were committed in retaliation for the Defendant's exercise of his legal tenancy rights, by a convicted felon engaged in a personal vendetta. The government's lead agent, United States Postal Inspector Dillon, then knowingly or with reckless disregard for the truth, concealed this illicit origin from the grand jury. He presented a sanitized fiction—a "tip from PNC Bank"—to secure an indictment, obscuring the true, biased, and criminally tainted source of the entire case. This material misrepresentation violated the Fifth Amendment's guarantee of due process and the integrity of the grand jury proceeding. Accordingly, Defendant Jose Biaou respectfully requests that this Court: (1) order an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to determine the facts; and (2) upon proof of misconduct, dismiss the indictment.

## STATEMENT OF FACTS

1. **The Illicit Genesis of the Investigation.** The Defendant's landlord, Dean Addem aka Tarek Abou-Khatwa, was engaged in an acrimonious civil dispute with Mr. Biaou over the residence at 2303 Bancroft Place. Court records from that dispute demonstrate the landlord's motive and illegal actions.

2. **The Criminal Act.** As part of this vendetta, the landlord illegally entered Mr. Biaou's residence and stole private documents and data. This individual was convicted of (among other crimes and violations) seven (7) counts of mail fraud, six (6) counts of wire fraud and (5) counts of identity theft. Per court filings, Mr. Addem was scheduled to self-surrender to Federal Prison for a 70-month prison sentence on February10, 2022 [Exhibit document 181 Case No18-cr-00067 (TSC)]. He served a 15-month prison sentence and was released in May 2023. Immediately upon his release Mr. Addem engaged in a campaign of harassment, threats and criminal violations of Defendant's tenancy rights per provisions of the DC Rental housing Act of 1985 D.C. Official Code 42-3505.01 ("Act"). Mr. Addem is currently incarcerated on unrelated charges, underscoring his criminal propensity.

3. **The "Tip."** The landlord then provided these illegally obtained materials to multiple federal authorities and agencies, including the United States Postal Inspection Service (USPIS) and the Internal Revenue Service (IRS). This unlawful and vindictive act is the true genesis of the government's investigation.

4. **The Grand Jury Misrepresentation.** Before the grand jury, USPIS Inspector Dillon testified that the investigation began with a "tip from PNC Bank." (The government has refused to

produce this alleged tip, claiming it is protected by the Bank Secrecy Act—a legal pretext addressed in the motion to compel and below). This testimony was materially false and misleading. It concealed that the information originated from a criminal trespass and theft by a biased adversary, not from a neutral financial institution conducting routine oversight.

5. *The Materiality of the Misrepresentation.* The credibility and motive of a confidential informant are paradigmatically material to a grand jury's evaluation of probable cause. See United States v. Basurto, 497 F.2d 781 (9th Cir. 1974). Had the grand jury known the investigation was triggered by a crime committed by a vindictive landlord, it may well have questioned the reliability of the entire premise and declined to indict.

## ARGUMENT

### I. THE DEFENDANT HAS MADE A SUBSTANTIAL PRELIMINARY SHOWING WARRANTING A FRANKS HEARING ON THE GRAND JURY TESTIMONY.

A Franks hearing is not limited to search warrant affidavits. Its core principle—that a defendant is entitled to a hearing when he makes a substantial preliminary showing that a government agent's knowing or reckless falsehood was material to a judicial finding—applies with equal, if not greater, force to grand jury proceedings, which are the very mechanism that initiates a prosecution. See Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988).

Here, Mr. Biaou has made the requisite showing:

· *Material False Statement*: High likelihood testimony that the tip came from "PNC Bank" was false. The defendant contends that the true source was the criminal landlord.

· *Knowingly or Recklessly Made*: Inspector Dillon either knew the true source or was recklessly indifferent to it. The government's continued refusal to produce the alleged "PNC tip" under a

dubious claim of privilege (addressed in the concurrently filed Motion to Compel) supports an inference of consciousness of guilt. Furthermore, the idea that PNC Bank would report suspected SBA loan fraud directly to USPIS, rather than to the SBA's own Office of Inspector General, defies standard law enforcement protocol and makes the agent's claim inherently suspect.

· *Materiality:* The source of the investigation is not a trivial detail. It goes directly to the reliability and motivation behind the entire government effort. Concealing that the "tipster" was a criminal antagonist is "material" as a matter of law. See United States v. Soares, 998 F.2d 671, 673 (9th Cir. 1993).

## II. THE GOVERNMENT'S REFUSAL TO PRODUCE THE ALLEGED "PNC TIP" FURTHER WARRANTS JUDICIAL SCRUTINY.

The government's claim that the Bank Secrecy Act (BSA) prohibits disclosure is meritless and reinforces the need for a hearing. The BSA is designed to protect financial institutions from liability for reporting; it does not create a privilege for the government to withhold Brady material or evidence central to a defense. *See, e.g., United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (ordering production of SARs). The government's use of this statute as a shield is a transparent attempt to hide the true origins of its case from both the defense and the Court.

## III. UPON PROOF OF MISCONDUCT, THE INDICTMENT MUST BE DISMISSED.

Dismissal of an indictment is the appropriate remedy when the government knowingly presents false or materially misleading testimony to the grand jury. Basurto, 497 F.2d at 785-86; Bank of Nova Scotia, 487 U.S. at 261-62 ("Dismissal of the indictment may be appropriate if… there is grand jury misconduct."). Here, the misconduct is not a technical oversight but a deliberate obfuscation of the investigation's corrupt origins, which strikes at the heart of the grand jury's

function. The indictment is fatally tainted and must be dismissed to vindicate the integrity of these proceedings.

## PROPOSED HEARING AND RELIEF

To adjudicate these critical factual disputes, Defendant respectfully requests the Court:

1. Schedule an evidentiary hearing at which Defendant may subpoena and examine:

   · USPIS Inspector Dillon on his grand jury testimony and knowledge of the tip's source.

   · The Landlord, Dean Addem aka Tarek Abou-Khatwa (currently incarcerated), on his illegal actions and communications with federal agencies.

   · Any custodian of records from PNC Bank regarding the alleged tip.

2. Order the government to produce all documents related to the initiation of the investigation, including the alleged PNC tip.

3. Upon a finding that material false testimony was presented to the grand jury, dismiss the indictment in its entirety.

## CONCLUSION

For the foregoing reasons, Defendant Jose Biaou respectfully requests that this Court grant his Motion for a Franks Hearing and, following such hearing, dismiss the indictment against him.